UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JOSEPH UTURO,

              Petitioner,             Case No. 2:23-cv-257

v.                             Honorable Paul L. Maloney

CATHERINE S. BAUMAN,

              Respondent.

_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Joseph Uturo is incarcerated with the Michigan Department of Corrections at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. Following a jury trial in the Montcalm County Circuit Court, Petitioner was convicted of one count of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b, and one count of second-degree criminal sexual conduct (CSC-II), in violation of Mich. Comp. Laws § 750.520c. In November of 2018, the trial court sentenced Petitioner to 17 to 50 years' incarceration for the CSC-I conviction and 10 to 15 years' incarceration for the CSC-II conviction. However, in November of 2022, Petitioner was resentenced to 15 to 50 years for the CSC-I conviction, and 71 months to 15 years for the CSC-II conviction.

On December 29, 2023, Petitioner filed his habeas corpus petition, raising the following ground for relief:

    I.      Petitioner's conviction of CSC-1st Degree . . . must be set aside . . . due to vindictive prosecution in violation of due process . . . .

(§ 2254 Pet., ECF No. 1, PageID.5.) Specifically, Petitioner claims that during the trial, "in retaliation for defense seeking a directed verdict of acquittal," the prosecutor requested that one of the counts be changed from CSC-III to CSC-I. (*Id.*, PageID.6.) Petitioner states that the trial court granted the request "leaving CSC-1st degree and one count of CSC-2nd degree." (*Id.*)

On September 24, 2024, Respondent filed a motion to stay the Court's order requiring a responsive pleading pending exhaustion of Petitioner's collateral appeal to the Michigan Supreme Court. (ECF No. 10.) Respondent also filed the state court record. Petitioner has filed a response in opposition to Respondent's motion. (ECF No. 12.) For the following reasons, the Court will deny Respondent's motion to stay. Moreover, upon review of the state court record, the Court concludes that Petitioner has failed to set forth a meritorious federal claim for relief. Accordingly, his § 2254 petition will be denied.

## Discussion

### I.    Factual Allegations

The Michigan Court of Appeals described the events underlying Petitioner's convictions as follows:

> From 2012 through 2017, the victim in this matter, [Petitioner's] biological daughter, lived with [Petitioner]. In October 2013, when the victim was nine years old, she came home after school one day to the house where she and [Petitioner] resided with family friends. On that day, [Petitioner] took the victim into the basement, where his bedroom was located, and sat on his bed next to the victim. He then touched her legs, chest, and vagina over her clothes. [Petitioner] pinned the victim down and removed her shirt. He attempted to remove her pants, but the victim kicked him and ran upstairs.
>
> The victim testified at trial that [Petitioner] thereafter sexually assaulted her many times by putting his penis in her vagina when she and [Petitioner] moved to another home, once when they stayed at a third home, and then again when they were living with [Petitioner's] parents, the victim's grandparents. With respect to the last incident, the victim testified that [Petitioner] slept in a camper outside his parent's trailer while the victim slept in the trailer with her grandparents, but that on nights that [Petitioner] worked, the victim slept in the camper instead. According to the

victim, on one night that she was sleeping in the camper in the summer of 2017, [Petitioner] came home and penetrated the victim's vagina with his penis. Approximately two weeks later, the victim moved in with her mother. In early August 2017, when the victim's mother told her that she (the victim) was going to go back to live with [Petitioner], the victim told her mother that defendant had abused her. Her mother called the police. [Petitioner] was eventually convicted of one count of CSC-I and one count of CSC-II, as previously stated.

*People v. Uturo*, No. 347311, 2020 WL 5079559, at *1 (Mich. Ct. App. Aug. 27, 2020).

Petitioner's jury trial initially began on July 17, 2018. (ECF No. 11-6.) However, defense counsel moved for a mistrial on the basis that the unredacted version of the recorded phone call between Petitioner and the victim had been played for the jury. (*Id.*, PageID.296–297.) The trial court concluded that a "manifest necessity" for a mistrial existed "in light of the fact that the Court's prior order had not been complied with." (*Id.*, PageID.299.)

Jury selection for Petitioner's retrial occurred on September 25, 2018. (Trial Tr. I, ECF No. 11-7.) Over the course of two days, the jury heard testimony from numerous witnesses, including law enforcement officers, the victim, an expert in child abuse pediatrics, the victim's mother, the mother of Petitioner's son, one of Petitioner's friends, Petitioner's son's grandmother, a woman whom the victim and Petitioner had lived with, and Petitioner himself. (Trial Tr. I and II, ECF Nos. 11-7, 11-8.) On September 26, 2018, after only an hour of deliberation, the jury returned a guilty verdict. (Trial Tr. II, ECF No. 11-8, PageID.781–782.) Defendant appeared before the trial court for sentencing on November 8, 2018. (ECF No. 11-9.)

Petitioner, with the assistance of counsel, appealed his convictions and sentences to the Michigan Court of Appeals. On direct appeal, Petitioner raised the following claims: (1) the trial court erred by denying Petitioner's motion to suppress the recorded phone call between himself and the victim; (2) counsel was ineffective for failing to provide the prosecution a medical record regarding the victim's prior treatment for a vagina injury; (3) the trial court abused its discretion by instructing the jury regarding a violation of the witness sequestration order without first

determining whether the violation actually prejudiced the prosecution; and (4) the trial court erred by assessing 50 points at sentencing for Offense Variable (OV) 13. *See Uturo*, 2020 WL 5079559, at *1–8. On August 27, 2020, the Michigan Court of Appeals affirmed Petitioner's convictions and sentences. *Id.* at *1. The Michigan Supreme Court denied Petitioner's application for leave to appeal on March 31, 2021. *See People v. Uturo*, 956 N.W.2d 225 (Mich. 2021).

On April 14, 2022, Petitioner returned to the trial court and filed a *pro se* motion for relief from judgment pursuant to Michigan Court Rule 6.500, raising numerous claims, including the vindictive prosecution claim he now raises in his § 2254 petition. (ECF No. 11-10.) In an order entered on August 10, 2022, the trial court granted Petitioner's Rule 6.500 motion with respect to Petitioner's challenge to the scoring of OV 13 and noted that Petitioner should be resentenced. (ECF No. 11-12.) The trial court denied the Rule 6.500 motion in all other respects. (*Id.*)

The trial court conducted Petitioner's resentencing on November 17, 2022. (ECF No. 11-14.) The trial court sentenced Petitioner to 15 to 50 years for the CSC-I conviction, and 71 months to 15 years for the CSC-II conviction, with credit for time already served. (*Id.*, PageID.899–900.)

Petitioner subsequently appealed from both his new sentence and the denial of his Rule 6.500 motion. On April 17, 2023, the Michigan Court of Appeals denied Petitioner's application for leave to appeal from the denial of his Rule 6.500 motion, and the Michigan Supreme Court denied Petitioner's application for leave to appeal on October 31, 2023. *See People v. Uturo*, 996 N.W.2d 465 (Mich. 2023). On December 14, 2023, the Michigan Court of Appeals affirmed Petitioner's new sentence, rejecting Petitioner's argument that the trial court erred by assessing 25 points for OV 13. *See People v. Uturo*, No. 364492, 2023 WL 8663805, at *1 (Mich. Ct. App. Dec. 14, 2023).

Petitioner filed the instant § 2254 petition on December 29, 2023. Shortly thereafter, on or about January 2, 2024, Defendant returned to the trial court and filed a subsequent Rule 6.500 motion. (ECF No. 11-15.) The trial court denied Petitioner's Rule 6.500 motion on January 12, 2024. (ECF No. 11-16.) On April 18, 2024, the Michigan Court of Appeals denied Petitioner's application for leave to appeal. *See People v. Uturo*, 11 N.W.3d 491 (Mich. 2024). The Michigan Supreme Court denied Petitioner's amended application for leave to appeal on September 30, 2024, noting that Petitioner's "motion for relief from judgment is prohibited by MCR 6.502(G)." *Id.*

## II.    Motion to Stay

As set forth *supra*, Respondent has filed a motion to stay the Court's order directing Respondent to file a responsive pleading in this matter. (ECF No. 10.) Respondent filed this motion on September 24, 2024, noting that Petitioner's application for leave to appeal from the denial of his successive Rule 6.500 motion was still pending before the Michigan Supreme Court. (*Id.*, PageID.45.) However, as noted above, the Michigan Supreme Court denied Petitioner's application for leave to appeal on September 30, 2024. *See People v. Uturo*, 11 N.W.3d 491 (Mich. 2024). Because proceedings regarding Petitioner's successive Rule 6.500 motion are now finalized, Respondent's motion for a stay (ECF No. 10) will be denied as moot. Although Respondent requests an additional 90 days to address the merits of Petitioner's § 2254 petition (*Id.*, PageID.51), the Court concludes that because the state court record has been filed, a response is not necessary for consideration of Petitioner's sole ground for relief. Accordingly, the Court will address the merits of that ground below.

## III.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685,

693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated

pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on

the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established federal law as determined by the Supreme Court
> of the United States; or (2) resulted in a decision that was based upon an
> unreasonable determination of the facts in light of the evidence presented in the
> state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit

precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of

the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal

quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard

is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation

marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.

28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not

consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000);

*Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal

law" does not include decisions of the Supreme Court announced after the last adjudication of the

merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to

an examination of the legal landscape as it would have appeared to the Michigan state courts in

light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller

v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court

applies a rule different from the governing law set forth in the Supreme Court's cases, or if it

decides a case differently than the Supreme Court has done on a set of materially indistinguishable

facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was

required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## IV.    Discussion

In his sole ground for relief, Petitioner asserts that the prosecution engaged in a vindictive prosecution, which violated Petitioner's due process rights. (§ 2254 Pet., ECF No. 1, PageID.5.) Petitioner argues that because of this vindictive prosecution, his CSC-I conviction must be set aside. (*Id.*) In support of his argument, Petitioner notes that at the close of testimony, "defense counsel moved for a directed verdict on two counts of [CSC-I] due to a lack of testimony by [the victim] of penetration on those charged occasions." (*Id.*, PageID.6.) The trial court granted that motion. (*Id.*) Petitioner argues that "in retaliation for [the] defense seeking a directed verdict of acquittal," the prosecutor requested that the trial court amend the CSC-III charge to a CSC-I charge. (*Id.*) The trial court granted that request, "leaving [CSC-I] and one count of [CSC-II]." (*Id.*) Petitioner contends that "[t]his vindictive increase in charge . . . would not have happened if [the] defense had not moved for [a] directed verdict of acquittal." (*Id.*, PageID.7.)

Defendant raised a vindictive prosecution claim in his first Rule 6.500 motion. In that motion, however, Defendant framed his claim as follows:

> In regards to the first issue raised by [Petitioner], he claims that the prosecutor punished him for exercising a constitutional right. He claims that because he did not take a plea deal and continued to exercise his right to a trial by a jury of his peers, the prosecutor, despite having the same evidence it had when the crimes against him were originally charged, waited until mid-trial to enhance Count 3, which was originally CSC, 3rd degree, to CSC, 1st degree. He argues that this was done to increase the "ceiling of punishment" from a 15–year maximum to potentially life in prison.

(ECF No. 11-12, PageID.864.) In response, the prosecution argued that "an information can be amended at any time pursuant to MCL 767.76, and that, in this case, the prosecution did not add a new charge, but simply amend[ed] the charge to fit the testimony that was elicited at trial." (*Id.*, PageID.866.) The prosecution argued further that "it was not in retaliation to the defendant asserting his right to a trial but was amended to reflect the type of relationship between the defendant and the victim." (*Id.*) The trial court rejected Petitioner's argument, stating only that Petitioner could have raised this claim on direct appeal and that Petitioner "ha[d] not met his burden of a showing of good cause and actual prejudice such that this Court should even consider granting the requested relief." (*Id.*, PageID.868.)

Defendant touched upon the amendment of Count 3 again in his successive Rule 6.500 motion. However, in that motion, he argued that the trial court lacked jurisdiction to allow the prosecution to amend the charge because Petitioner had not received a preliminary examination for the amended charge. (ECF No. 11-15.) The trial court denied Petitioner's successive Rule 6.500 motion, noting that Michigan Court Rule 6.112(H) allows a court to permit a prosecutor to amend an information at any time before, during, or after trial unless the amendment would "unfairly surprise or prejudice the defendant." (ECF No. 11-16, PageID.918.)

The United States Court of Appeals for the Sixth Circuit recently discussed what is necessary for a habeas petitioner to establish vindictive prosecution:

> A defendant may establish vindictive prosecution two ways. He can demonstrate "actual vindictiveness" by establishing through objective evidence that the

prosecutor's actions were to punish the defendant for standing on his legal rights. *Bragan v. Poindexter*, 249 F.3d 476, 481 (6th Cir. 2001). Alternatively, the defendant may show that, in his particular situation, a "realistic likelihood of vindictiveness" existed for the prosecutor's action. *Id.* The court presumes an improper vindictive motive only when this reasonable likelihood of vindictiveness exists. *Id.* at 481–82. The defendant must establish that: (1) the prosecutor had "some stake" in deterring the exercise of his rights; and (2) the prosecutor's conduct was somehow unreasonable. *Id.* at 482.

*Haight v. Jordan*, 59 F.4th 817, 857 (6th Cir. 2023).

First, to the extent that Petitioner reiterates his assertion that the prosecutor amended the charge mid-trial to retaliate against Petitioner for not taking a plea deal, Petitioner has not—and cannot—demonstrate that the trial court's rejection of this argument is contrary to, or an unreasonable determination of, clearly established federal law. The Supreme Court has stated: "[I]n the 'give-and-take' of plea bargaining, there is no . . . element of punishment or retaliation" if the government threatens additional charges if plea bargaining fails, "so long as the accused is free to accept or reject the prosecution's offer." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978); *see also United States v. Walls*, 293 F.3d 959, 970 (6th Cir. 2002) (stating that "[w]hen the pretrial addition of more serious charges results merely from the failure of the plea bargaining process, it is not vindictive prosecution"). Thus, Petitioner simply cannot maintain a vindictive prosecution claim on the basis that the charge was amended after Petitioner rejected a plea offer.

Moreover, the record before the Court cannot support Petitioner's assertion that the prosecutor retaliated against Petitioner for defense counsel moving for a directed verdict by seeking to amend the CSC-III charge to a CSC-I charge. Instead, the record reflects that after the defense rested, the trial court excused the jury and took a recess to discuss procedural matters with counsel. (Trial Tr. II, ECF No. 11-8, PageID.719–720.) After the jury left, the trial court asked the prosecutor if she wanted to address the "aspect of possibly requesting an amendment to the charges at this time." (*Id.*, PageID.720.) In response, the prosecutor stated:

10

> Yes, your Honor. Pursuant to the testimony that's been given over the course of these two days, we would move to amend Count—let me get the right count here— Count 4 to Criminal Sexual Conduct First Degree, Based on a Relationship. That he engaged in penis/vaginal penetration when she was at least thirteen, but less than sixteen, and that he was both related to the victim by blood or affinity to the fourth degree and/or were members of the same household.

(*Id.*) In response, defense counsel stated:

> Well, I guess I should put on the record, as I indicated in chambers, you know, my concern was the timing of this.
>
> Clearly, this statute is new. This isn't something that came about in the last year or eighteen months, ever since he's been initially charged in this matter. And certainly, again, the timing of it, again, appeared to me to be retaliatory after the alleged victim testified, and again, failed to testify as to any penetration, either by finger or vaginal—penis/vaginal penetration during the first encounter in October of 2013.
>
> So again, it appeared that, okay, "Because we weren't able to show CSC 1st, therefore, we'll bump this charge up." Certainly, it appeared to be in response to that.
>
> I certainly understand the argument that, again, prosecutors can certainly amend the complaint at any time, certainly, to conform with the proofs. But, again, it just is the poor timing of the amendment to the complaint in this matter.

(*Id.*, PageID.721–722.) The trial court granted the modification, stating:

> Well, so I certainly note and respect the Defense's objection, but Count 4 is CSC 3rd. It is premised upon actual penetration, so I don't really see a difference there, and then the only other aspect that's different, is that they were either related by blood or affinity or were members of the same household. So I do find that this appears to be a modification that is in keeping with the testimony, and would grant that.

(*Id.*, PageID.722.)

Then, **after** the prosecution had requested to amend Count 4 and the trial court granted that request, defense counsel moved for a directed verdict on Counts 2 and 3 on the basis that there was no testimony or proof that penile/vaginal intercourse had occurred and on the basis that the victim "only spoke of touching outside of her clothing" with respect to the October 2013 incident. (*Id.*, PageID.722–723.) In ruling upon that motion, the trial court stated:

> I will grant the directed verdict as to one of the CSC 1st counts, but we will amend the CSC 4th—excuse me—Count 4, which was originally charged as Criminal Sexual Conduct in the Third Degree, to Criminal Sexual Conduct in the First Degree, based upon the statute that has been presented by Mrs. Krause here today and just recently referenced, that being 750.520b(1)(b).

(*Id.*, PageID.726.) The prosecutor responded, "Well, can we just say, then, you're keeping Count 1? And 2 and 3 are going away, based on your decision?" (*Id.*) The trial court clarified that "Counts 2 and 3 [were] being directed out," Counts 1 and 5 were staying as is, and that Count 4 was being amended to CSC-I. (*Id.*, PageID.727.) With respect to amending the information, the trial court noted:

> So I would suggest, then, that there be an Amended Information that references a Count 1, CSC 1st; a Count 2, CSC 1st, with that being penis/vagina, with respect to a child in the same household; and then Count 3, CSC 2nd, as it relates to the sexual contact.

(*Id.*, PageID.728.)

Thus, contrary to Petitioner's assertion, the record reflects that the prosecutor moved to amend the CSC-III charge to a CSC-I charge **before** defense counsel made the motion for a directed verdict. Although the record suggests that the possibility of amendment was raised in an in-chambers meeting during the course of trial, Petitioner's argument is solely based upon his speculative belief that vindictive prosecution occurred. Petitioner has not—and cannot—offer any objective evidence that the prosecutor amended the charge to punish Petitioner for exercising his right to move for a directed verdict on certain counts. Moreover, Petitioner does not demonstrate a realistic likelihood of vindictiveness, as the record is devoid of evidence suggesting that the prosecutor had a stake in deterring Petitioner's exercise of his right to request a directed verdict and that the prosecutor's conduct was unreasonable. Indeed, the trial court noted that it would explain to the jury that "during the course of the trial, we never know how the testimony is going

to come out, so that has had an impact on the final counts, maybe something along those lines." (Trial Tr. II, ECF No. 11-8, PageID.729.) Defense counsel responded: "That would be fine." (*Id.*)

In sum, Petitioner has not demonstrated that the prosecutor engaged in a vindictive prosecution by amending the CSC-III charge to a CSC-I charge. Accordingly, Petitioner is not entitled to federal habeas relief.

## V.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined Petitioner's claim under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claim. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claim was debatable or wrong. Therefore, the Court will deny Petitioner a certificate

of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter an order and judgment denying Respondent's motion for a stay (ECF No. 10), denying Petitioner's § 2254 petition for failure to assert a meritorious federal claim, and denying a certificate of appealability.

Dated:    December 11, 2024                    /s/ Paul L. Maloney
                                                Paul L. Maloney
                                                United States District Judge